LAW OFFICES
**JOSEPH R. PALUMBO, JR.**
294 VALLEY ROAD
MIDDLETOWN, RHODE ISLAND 02842

TELEPHONE 401-846-5200
FAX 401-848-0984
E-MAIL joseph@palumbolaw.net

April Twenty First
Two Thousand Eight

President
Herbert J. Sims & Co.
3530 Post Road, Suite 301
Southport, CT 06890-1169

*VIA CERTIFIED MAIL*

***Re: Edward Hayes, et al v. SIMS Capital Management, LLC, et al***
***C.A. No. NC 2008-0207***

Dear Sir/Madame:

In accordance with Rule 4 of the Rules of Civil Procedure of the Superior Court, I am enclosing copies of summons and complaint filed in the Newport County Superior Court in which you are named as a defendant.

Please pay attention to the time for filing and serving a response which is indicated in the summons.

Very truly yours,

Joseph R. Palumbo, Jr.

JRP, JR/blp
Enclosure

# State of Rhode Island and Providence Plantations
## SUPERIOR COURT

[ ] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [X] NEWPORT

CIVIL ACTION, FILE No. NC 2008-207

EDWARD HAYES, ET AL
Plaintiff

SIMS CAPITAL MANAGEMENT, LLC, ET AL
Defendant

***Summons***

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Joseph R. Palumbo, Jr. Plaintiff's attorney, whose address is 294 Valley Road, Middletown, RI 02842 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you,exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

Jane M. Anthony
CLERK

Dated: April 1, 2008

(Seal of the Superior Court)

S- 135 (REV. 10/00)

# State of Rhode Island and Providence Plantations

..............................................,SC

## PROOF OF SERVICE

I hereby certify that on the .......................................... day of ................................................... I served a copy of this summons and a copy of the complaint received therewith upon ....................................................................................

..........................................................................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,.......................................................

.............................................................................................., with a person of suitable age and discretion then residing therein. (Address)

By leaving a copy of the summons and complaint at his/her usual place of abode, ..............................................

.............................................................................................., with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, namely ..........................................................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

..........................................................................................................................................................................

..........................................................................................................................................................................

..........................................................................................................................................................................

Sheriff's Fees

Travel .......................... $............................

Service ........................ $............................

$............................

.......................................................
Deputy Sheriff

CIVIL ACTION

FILE NO. NC 2006-207

SUMMONS

SUPERIOR COURT

EDWARD HAYES, ET AL

VS

SIMS CAPITAL MANAGEMENT, LLC., ET AL

Joseph R. Palumbo, Jr.

ATTORNEY FOR PLAINTIFF

R.I. Bar No. 0405
296 Valley Road
Middletown, RI 02842
(401) 846-5200

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

LAW OFFICES
**JOSEPH R. PALUMBO, JR.**
294 VALLEY ROAD
MIDDLETOWN, RHODE ISLAND 02842

TELEPHONE 401-846-5200
FAX 401-848-0984
E-MAIL joseph@palumbolaw.net

April Twenty First
Two Thousand Eight

Managing Member
SIMS Freedom Bay, LLC
c/o Herbert J. Sims & Co.
3530 Post Road, Suite 301
Southport, Connecticut 06890-1169

*VIA CERTIFIED MAIL*

***Re: Edward Hayes, et al v. SIMS Capital Management, LLC, et al***
***C.A. No. NC 2008-0207***

Dear Sir/Madame:

In accordance with Rule 4 of the Rules of Civil Procedure of the Superior Court, I am enclosing copies of summons and complaint filed in the Newport County Superior Court in which you are named as a defendant.

Please pay attention to the time for filing and serving a response which is indicated in the summons.

Very truly yours,

Joseph R. Palumbo, Jr.

JRP, JR/blp
Enclosure

# State of Rhode Island and Providence Plantations
## SUPERIOR COURT

[ ] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [X] NEWPORT

CIVIL ACTION, FILE No. NC 2008-207

EDWARD HAYES, ET AL
**Plaintiff**

SIMS CAPITAL MANAGEMENT, LLC, ET AL
**Defendant**

***Summons***

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Joseph R. Palumbo, Jr. Plaintiff's attorney, whose address is 294 Valley Road, Middletown, RI 02842 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you,exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

Jane M. Anthony
CLERK

Dated: April 1, 2008

**(Seal of the Superior Court)**

# State of Rhode Island and Providence Plantations

..........................................,SC

## PROOF OF SERVICE

I hereby certify that on the ........................................ day of ................................................ I served a copy of this summons and a copy of the complaint received therewith upon ...........................................................................

...........................................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,...............................................

..........................................................................................., with a person of suitable age and discretion then residing therein. (Address)

By leaving a copy of the summons and complaint at his/her usual place of abode, ..........................................
..........................................................................................., with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, namely .....................................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

...........................................................................................................................................

...........................................................................................................................................

...........................................................................................................................................

Sheriff's Fees

Travel ........................ $..........................

Service ...................... $..........................

$..........................

..........................................................
Deputy Sheriff

CIVIL ACTION

FILE NO. NC 2008-207

SUMMONS

SUPERIOR COURT

EDWARD HAYES, ET AL

VS

SIMS CAPITAL MANAGEMENT, LLC., ET AL

Joseph R. Palumbo, Jr.

ATTORNEY FOR PLAINTIFF

R.I. Bar No. 0405
294 Valley Road
Middletown, RI 02842
(401) 846-5200

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

LAW OFFICES
**JOSEPH R. PALUMBO, JR.**
294 VALLEY ROAD
MIDDLETOWN, RHODE ISLAND 02842

TELEPHONE 401-846-5200
FAX 401-848-0984
E-MAIL joseph@palumbolaw.net

April Twenty First
Two Thousand Eight

William B. Sims
c/o Herbert J. Sims & Co.
3530 Post Road, Suite 301
Southport, Connecticut 06890-1169

*VIA CERTIFIED MAIL*

***Re: Edward Hayes, et al v. SIMS Capital Management, LLC, et al***
***C.A. No. NC 2008-0207***

Dear Mr. Sims:

In accordance with Rule 4 of the Rules of Civil Procedure of the Superior Court, I am enclosing copies of summons and complaint filed in the Newport County Superior Court in which you are named as a defendant.

Please pay attention to the time for filing and serving a response which is indicated in the summons.

Very truly yours,

Joseph R. Palumbo, Jr.

JRP, JR/blp
Enclosure

# State of Rhode Island and Providence Plantations

## SUPERIOR COURT

[ ] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [X] NEWPORT

CIVIL ACTION, FILE No. NC 2008-207

EDWARD HAYES, ET AL
Plaintiff

SIMS CAPITAL MANAGEMENT, LLC, ET AL
Defendant

***Summons***

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Joseph R. Palumbo, Jr. Plaintiff's attorney, whose address is 294 Valley Road, Middletown, RI 02842 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you,exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

Jane M. Anthony
CLERK

Dated: April 1, 2008

(Seal of the Superior Court)

S- 135 (REV. 10/00)

# State of Rhode Island and Providence Plantations

..............................................,SC

## PROOF OF SERVICE

I hereby certify that on the ........................................... day of ......................................................... I served a copy of this summons and a copy of the complaint received therewith upon ..................................................................................................

.........................................................................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,.................................................

..............................................................................................., with a person of suitable age and discretion then residing therein. (Address)

By leaving a copy of the summons and complaint at his/her usual place of abode, ............................................ ..............................................................................................., with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, namely ..........................................................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

.........................................................................................................................................................................

.........................................................................................................................................................................

.........................................................................................................................................................................

Sheriff's Fees

Travel .......................... $............................

Service ........................ $............................

$............................

.............................................................

Deputy Sheriff

CIVIL ACTION

FILE NO. NC 2008-207

SUMMONS

SUPERIOR COURT

EDWARD HAYES, ET AL

VS

SIMS CAPITAL MANAGEMENT, LLC., ET AL

Joseph R. Palumbo, Jr.

ATTORNEY FOR PLAINTIFF

R.I. Bar No. 0405
29 Valley Road
Middletown, RI 02842
(401) 846-5200

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

LAW OFFICES
**JOSEPH R. PALUMBO, JR.**
294 VALLEY ROAD
MIDDLETOWN, RHODE ISLAND 02842

TELEPHONE 401-846-5200
FAX 401-848-0984
E-MAIL joseph@palumbolaw.net

April Twenty First
Two Thousand Eight

R. Jeffrey Sands
c/o Herbert J. Sims & Co.
3530 Post Road, Suite 301
Southport, Connecticut 06890-1169

*VIA CERTIFIED MAIL*

***Re: Edward Hayes, et al v. SIMS Capital Management, LLC, et al***
***C.A. No. NC 2008-0207***

Dear Mr. Sands:

In accordance with Rule 4 of the Rules of Civil Procedure of the Superior Court, I am enclosing copies of summons and complaint filed in the Newport County Superior Court in which you are named as a defendant.

Please pay attention to the time for filing and serving a response which is indicated in the summons.

Very truly yours,

Joseph R. Palumbo, Jr.

JRP, JR/blp
Enclosure

# State of Rhode Island and Providence Plantations

## SUPERIOR COURT

[ ] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [x] NEWPORT

CIVIL ACTION, FILE No. NC 2008-207

| | | |
|---|---|---|
| EDWARD HAYES, ET AL<br>Plaintiff<br>SIMS CAPITAL MANAGEMENT, LLC,<br>ET AL Defendant | } | ***Summons*** |

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Joseph R. Palumbo, Jr. Plaintiff's attorney, whose address is 294 Valley Road, Middletown, RI 02842

an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you,exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

Jane M. Anthony
CLERK

Dated: April 1, 2008

(Seal of the Superior Court)

S- 135 (REV. 10/00)

# State of Rhode Island and Providence Plantations

.............................................,SC

## PROOF OF SERVICE

I hereby certify that on the .................................... day of ............................................. I served a copy of this summons and a copy of the complaint received therewith upon ..............................................................................

..............................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,..................................................

.......................................................................................... (Address), with a person of suitable age and discretion then residing therein.

By leaving a copy of the summons and complaint at his/her usual place of abode, ............................................

.........................................................................................., with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, namely ..............................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

Sheriff's Fees

Travel .......................... $............................

Service ....................... $...........................

$............................

..........................................................

Deputy Sheriff

CIVIL ACTION

FILE NO. NC 2008-207

SUMMONS

SUPERIOR COURT

EDWARD HAYES, ET AL

VS

SIMS CAPITAL MANAGEMENT, LLC., ET AL

Joseph R. Palumbo, Jr.

ATTORNEY FOR PLAINTIFF

R.I. Bar No. 0405
294 Valley Road
Middletown, RI 02842
(401) 846-5200

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

STATE OF RHODE ISLAND
NEWPORT, SC.

SUPERIOR COURT

EDWARD HAYES, MANUEL DEMENEZES, and RONALD LEVESQUE

Plaintiffs

v.

SIMS CAPITAL MANAGEMENT, LLC, HERBERT J. SIMS & CO., SCM FREEDOM BAY, LLC, SIMS FREEDOM BAY, LLC, WILLIAM B. SIMS, R. JEFFREY SANDS, and JAMES EAGAN

Defendants

## COMPLAINT

Parties

1. Plaintiffs Edward Hayes ("Hayes"), Manuel DeMenezes ("DeMenezes"), and Ronald Levesque ("Levesque") are residents of the Town of Portsmouth, State of Rhode Island.

2. Defendant Sims Capital Management, LLC ("SCM") is a limited liability company which, on information and belief, is organized under the laws of the State of Delaware that specializes in investing capital in the senior living and long term care industry throughout the United States. At all times relevant hereto SCM was doing business in the State of Rhode Island.

3. Defendant Herbert J. Sims & Co., Inc. ("H J Sims") is an investment banking and brokerage firm which, on information and belief, is organized under the laws of the State of Connecticut that specializes in structuring and underwriting senior living and long term care financings. H J Sims has over 40 years of experience in financing senior living facilities and has underwritten over $9 billion in projects throughout the United States. At all times relevant hereto H J Sims was doing business in the State of Rhode Island.

4. Defendant SCM Freedom Bay, LLC ("SCM Freedom Bay") is a limited liability company which, on information and belief, is organized under the laws of the State of Delaware. On information and belief, SCM Freedom Bay is a wholly owned entity of SCM and an affiliate of H J Sims. At all times relevant hereto SCM Freedom Bay was doing business in the State of Rhode Island.

5. On information and belief, defendant Sims Freedom Bay LLC ("Sims Freedom Bay") is a limited liability company organized under the laws of the State of Connecticut. On information and belief, Sims Freedom Bay is an affiliate of H J Sims. At all times relevant hereto Sims Freedom Bay was doing business in the State of Rhode Island.

6. On information and belief, defendant William B. Sims (Sims") is a principal in both SCM and in H J Sims with extensive experience in the senior care industry and who has overseen the management of hundreds of senior living projects throughout the United States. At all times relevant hereto Sims was doing business in the State of Rhode Island.

7. On information and belief, defendant R. Jeffrey Sands ("Sands") is a principal in both SCM and H J Sims with extensive experience in the senior care industry. At all times relevant hereto Sands was doing business in the State of Rhode Island.

8. On information and belief, defendant James Eagan ("Eagan") was at all times relevant hereto a principal in SCM and doing business in the State of Rhode Island. During part of the time relevant hereto Eagan maintained an office in the premises of H J Sims in the State of Connecticut. Eagan has extensive experience in managing firms that specialize in investing capital and operating businesses and assets in the senior care and long-term care industry, including SCM.

9. The defendants are sometimes referred to herein collectively as "the Sims defendants."

<u>Allegations Common To All Counts</u>

10. In 1998, Adult Assisted Care Associates, LLC ("AACA"), a Rhode Island limited liability company, acquired certain real property owned by the Roman Catholic Diocese of Providence known as the Novitiate, comprising several contiguous parcels of land consisting of a total of approximately 106 acres located in Middletown and Portsmouth, Rhode Island. AACA was formed with the intent of developing the Novitiate property into a continuing care retirement community called Freedom Bay. When completed, Freedom Bay was intended to be comprised of residential condominiums, assisted living units, independent living units, nursing beds, a medical office building and a guest house.

11. Levesque was a member of AACA at the time of AACA's acquisition of the Novitiate property.

12. In or about May 2001, Levesque, Hayes, and DeMenezes began to formulate plans to acquire the 75% ownership interests of two other members of AACA, and, together, develop the Novitiate property as a continuing care retirement community.

13. Freedom Bay, LLC was formed for the purpose of acquiring the 75% ownership interests of said two members of AACA and subsequently Levesque, Hayes, and DeMenezes became equal members of Freedom Bay, LLC.

14. Levesque, Hayes, and DeMenezes intended that Freedom Bay, LLC would become the managing member of AACA in connection with the development of the Novitiate property as a continuing care retirement community.

15. Levesque, Hayes, and DeMenezes explored various financing sources to facilitate their intention to acquire the 75% ownership interests of said two members of AACA ("the acquisition") and develop the Novitiate property as a continuing care retirement community. The Sims defendants were among the financing sources Levesque, Hayes, and Demenezes explored. In various documents describing the proposed financing, Levesque, Hayes, and DeMenezes proposed providing a 35% ownership interest in AACA in consideration for a cash investment of $12 million to accomplish the acquisition and to pay off certain accrued debt of AACA related to the development.

16. In or about June 2002 Hayes and Levesque made a presentation to Eagan, who was already generally familiar with the project. In or about July 2002, Eagan indicated that the Sims defendants would not go forward with the project. However, in or about June 2003, Levesque, Hayes, and DeMenezes presented their proposal for financing directly to Sims, who stated that H J Sims would finance the acquisition and development of the project.

17. In or about August 2003, Sands, purporting to act on behalf of H J Sims, provided a proposal to Levesque, Hayes, and DeMenezes. H J Sims agreed to provide $12 million for the acquisition and to pay off AACA debt. It would be structured as $5 million of cash equity and a loan of approximately $7 million that would act as equity by subordinating to any additional financing needed for development of the continuing care retirement community. Sands represented that in exchange for such financing, H J Sims would accept a substantial rate of return on its investment and a 10% ownership interest in AACA to be held by an H J Sims owned entity to be identified later.

18. In or about October 2003 Eagan, acting in concert with Sands and Sims, provided a significantly different proposal to Levesque, Hayes, and DeMenezes. Under this proposal, SCM or its affiliate would provide the $12 million entirely as a loan, secured by the106 acres of the Novitiate property and SCM or its affiliate would also receive a 35% ownership interest in AACA, despite the fact that none of the Sims defendants would be making any equity investment. Eagan represented that the Sims defendants would be able to close on the financing in approximately sixty days, by December 8, 2003.

19. Fearful that they may lose their opportunity to acquire the 75% interests in AACA of said two individuals, Levesque, Hayes, and DeMenezes agreed to accept the proposal offered by Eagan on the condition that the structure of the financing not hinder debt financing required for continued development of the continuing care retirement community. Eagan not only assured Levesque, Hayes, and DeMenezes that the structure would not hinder additional financing, but also reassured them that the acquisition financing would be provided by December 8, 2003, and, that construction financing would be arranged by the Sims defendants within 60 days thereafter.

20. In reliance on Eagan's representations and warranties as set forth in paragraph 19 above, Levesque, Hayes, and DeMenezes accepted the terms of the financing offered by Eagan, acting in concert with Sands and Sims. Levesque, Hayes, and DeMenezes caused Freedom Bay, LLC to sign a purchase and sale agreement with the two AACA interest holders whose interests were to be purchased and made an earnest money deposit of $250,000 in connection therewith on or about October 20, 2003.

21. Levesque, Hayes, and DeMenezes were required to pay an upfront $40,000 fee to SCM to facilitate the acquisition financing.

22. Contrary to the representations and warranties made by Eagan to Levesque, Hayes, and DeMenezes, the Sims defendants inexplicably delayed the closing on the acquisition financing numerous times. Each time, Freedom Bay, LLC was forced to request an extension of the purchase and sale agreement and for each extension

Levesque, Hayes, and DeMenezes had to pay an additional deposit to the two AACA interest holders.

23. In the latter part of May 2004, Levesque, Hayes, and DeMenezes were informed by the two interest holders of AACA whose interests were being purchased that no further extensions of the purchase and sale agreement would be granted. By that time Levesque, Hayes, and DeMenezes had paid deposits to said AACA interest holders in the aggregate amount of $600,000 in addition to the $40,000 paid to SCM.

24. Levesque, Hayes, and DeMenezes informed the Sims defendants that the two interest holders of AACA whose interests were to be acquired would not extend the purchase and sale agreement any further.

25. Upon receipt of notice from Levesque, Hayes, and DeMenezes that said interest holders of AACA would not agree to any further extensions of the purchase and sale agreement, the Sims defendants suddenly informed Levesque, Hayes, and DeMenezes that they were prepared to close on the acquisition financing.

26. The closing on the $12 million acquisition loan occurred on or about June 4, 2004. Under the terms thereof, in consideration for its loan of $12 million, SCM Freedom Bay received a debt instrument from AACA and Freedom Bay, LLC of $12 million, secured by a first mortgage on the entire 106 acres of the Novitiate property and the personal guarantees of Levesque, Hayes, and DeMenezes. In addition, SCM Freedom Bay or its affiliate obtained a 35% ownership interest in AACA, despite the fact that neither the Sims defendants nor their affiliates provided any capital investment in AACA. Further, the Sims defendants set forth numerous management decisions which would require their approval and did thereafter assume an active management role in the project. On information and belief, SCM Freedom Bay borrowed the funds for the acquisition financing from HSH Nordbank, AG, New York Branch ("Nordbank"), and assigned to Nordbank all of its rights under the debt instrument executed by AACA and Freedom

Bay, LLC, the personal guarantees of Levesque, Hayes, and DeMenezes, and, the collateral for the acquisition financing.

27. On information and belief, the terms of the acquisition loan provided by SCM Freedom Bay were usurious.

28. Based on Eagan's representations and warranties, Levesque, Hayes, and DeMenezes reasonably expected that the Sims defendants would arrange construction financing within 60 days after the closing on the acquisition loan, thereby enabling Levesque, Hayes, and DeMenezes to commence construction of residential condominium units by the fall of 2004.

29. However, again, the Sims defendants failed to act in accordance with the representations and warranties that had been made by Eagan and did not secure financing for construction and further development of Freedom Bay until December 2004.

30. On or about December 17, 2004, more than six months after the closing on the acquisition loan, a closing occurred on a $12 million revolving line of credit construction loan arranged by the Sims defendants with Nordbank (the "construction loan"). The loan was made by Nordbank directly to AACA and its wholly owned subsidiary Freedom Bay Cottages, LLC ("Freedom Bay Cottages"). Under the terms of the construction loan, the loan proceeds were to be used to (a) partially fund development costs of 149 residential condominium units ("cottages"), (b) pay the cost of building a sewer treatment plant, and (c) make a $2,698,000 installment payment due to SCM Freedom Bay/Nordbank on the acquisition loan. In consideration for its receipt of the $2,698,000 payment on the acquisition loan, SCM Freedom Bay agreed to release its first mortgage position on two of the parcels where the cottages were to be constructed. Such parcels were thereupon conveyed to Freedom Bay Cottages, which granted a first mortgage position on such parcels to Nordbank, which also received as collateral a second mortgage on the remainder of the 106 acres. Levesque, Hayes, and DeMenezes

personally guaranteed the construction loan. None of the Sims defendants or their affiliates guaranteed or were required to guarantee the $12 million construction loan despite the fact that SCM held a 35% ownership interest in AACA.

31. As a result of the Sims defendants' delay in arranging the availability of the construction loan until December 17, 2004, construction of the cottages (or any construction for that matter) was delayed until the spring of 2005. As a consequence, Levesque, Hayes, and DeMenezes were needlessly caused to incur 10 months of interest indebtedness on the acquisition loan equaling approximately $1 million. If the construction loan had been provided when Eagan promised, (a) cottages would have been able to be constructed and sales commenced by the fall of 2004, (b) the net sales proceeds would have been applied to the acquisition loan, (c) the substantial additional interest indebtedness incurred on the acquisition loan would have thereby been avoided, (d) sufficient ongoing cash flow from sales would have been available to pay the appropriate level of interest due, and (e) engineering and architectural services in connection with the assisted living/independent living component ("AL/IL units") of the retirement community would have been able to be commenced. A great deal of interest had been expressed by individuals in the AL/IL units, which once designed and built, would have generated significant cash flow.

32. Instead, by the time of the commencement of construction in the spring of 2005, Levesque, Hayes, and DeMenezes had been forced to use up a significant amount of the construction loan for the payment of indebtedness on the acquisition loan and other debt associated with the project instead of on construction of the cottages and the engineering and architectural costs for the AL/IL units. The Sims defendants knew or should have known at the time the construction loan was provided in December 2004, six months after Eagan had previously represented it would be available, that the project would exhaust existing financial resources.

33. As a result of the Sims defendants' delay in arranging the construction loan and causing said loan to be used for purposes other than intended, additional financing had to be secured to proceed further with the development of Freedom Bay.

34. In or about June 2005, H J SIMS arranged a $6 million loan ("the mezzanine loan") through its affiliate, Sims FreedomBay. The mezzanine loan, which was personally guaranteed by Levesque, Hayes, and DeMenezes, was to be used to make an installment payment on the construction loan to Nordbank, as well as paying for advance architectural and engineering costs associated with the AL/IL units. Sims Freedom Bay was granted as collateral for the mezzanine loan, among other things, a subordinate mortgage position on the two parcels where the cottages were being constructed and a third mortgage position on the remainder of the 106 acres.

35. Out of the proceeds of the $6 million mezzanine loan, a payment of approximately $4.2 million was required to be made to Nordbank on the construction loan, $500,000 was retained by Sims Freedom Bay as an interest reserve and $130,000 for other expenses, and Sims Freedom Bay collected a $300,000 fee and $50,000 for closing costs. Therefore, out of the $6 million mezzanine loan arranged by the Sims defendants, only $800,000 was left out of the loan proceeds to advance the development of the project.

36. By virtue of the paydown of the revolving line of credit loan to Nordbank from the proceeds of the mezzanine loan, $4.2 million of the construction loan became available for continuing construction of the cottages and other necessary improvements and was used for such purposes.

37. In the summer and fall of 2005, Levesque, Hayes, and DeMenezes made numerous attempts to obtain additional financing to advance the development of Freedom Bay and to make a scheduled payment coming due on the acquisition loan to prevent the project from failing. Despite SCM's ownership of 35% in the development, the Sims

defendants made no substantial efforts to secure any financing necessary to advance the development of Freedom Bay under its then current structure, despite Eagan's and Sands' repeated assurances that all necessary financing would be available.

38. On or about October 27, 2005, Levesque, Hayes, and DeMenezes received a proposal from PRN Marshall Capital, LLC ("PRN Marshall") outlining a dual loan structure that would have completely refinanced the existing debt structure of Freedom Bay and would have provided funding for development of the AL/IL component. The two loan facilities in the aggregate amounted to $42,887,633. It was intended for a closing to take place on or before December 22, 2005. The terms of the financing were commercially reasonable, and it would have been highly desirable to have the entire project funded by a single entity.

39. Because Levesque, Hayes, and DeMenezes were prohibited from refinancing without concurrence of the Sims defendants, the Sims defendants were advised of the PRN Marshall financing proposal. The Sims defendants did not concur immediately even though time was of a critical nature due to an impending payment due to Sims Freedom Bay under the acquisition loan. On or about November 14, 2005 the Sims defendants authorized Levesque, Hayes, and DeMenezes to proceed and $25,000 was provided to PRN Marshall to accomplish due diligence on the proposed loans.

40. Due to the Sims defendants' delay in finally agreeing to allow Levesque, Hayes, and DeMenezes to proceed, PRN Marshall arranged a closing for a bridge loan of $3,850,000 to enable payment of the acquisition loan installment due to Sims Freedom Bay which was coming due. The closing on the bridge loan was scheduled for December 22, 2005.

41. However, during December 2005, the Sims defendants informed PRN Marshall that they could arrange a delay of the payment due on the acquisition loan and elected not to go forward with the bridge loan closing. The Sims defendants proposed additional changes to the total refinancing structure with PRN Marshall.

42. The Sims defendants extended the obligation of Levesque, Hayes, and DeMenezes to make their scheduled payment on the acquisition loan one month until January 31, 2006.

43. On or about January 11, 2006 PRN Marshall advised that the intended loan structure would include two financing facilities. The first facility was to be a $26.5 million revolving line of credit that would (i) pay off the existing acquisition loan balance of $9.302 million; (ii) replace the existing cottage construction revolving loan with Nordbank and increase the limit to allow continued construction of cottages; and (iii) pay down $1.4 million of the Sims Freedom Bay mezzanine loan balance. That loan was targeted to close by January 31, 2006. The second financing facility was to be a $36.735 million loan for construction of the AL/IL component. That loan was targeted to close on or before March 31, 2006. The Sims defendants would only have been required to re-subordinate the remaining balance of the mezzanine loan to act as additional equity in the project.

44. On or about February 1, 2006, PRN Marshall once again revised its loan structure to accommodate further the Sims defendants' request, changing the loan amount to total $42.5 million. PRN Marshall only requested that the Sims defendants leave $4.25 million (or 10% of the loan amount total) of the mezzanine loan in place and subordinate it to PRN Marshall's new loan. In addition, PRN Marshall requested a guarantor with net worth liquidity of $5 million. The Sims defendants would not be required to place any additional cash into the project. The Sims defendants unreasonably refused to provide the requested guarantee or to maintain the mezzanine financing in a subordinated position. PRN Marshall therefore withdrew its offer of financing.

45. On or about February 9, 2006, Eagan by phone and Sands by e-mail required Levesque, Hayes, and DeMenezes to attend a meeting. On or about February 14, 2006, Levesque, Hayes, and DeMenezes attended a meeting at the office of H J Sims in Southport, Connecticut. According to Sands, the purpose of the meeting was to discuss

information which the Sims defendants had gathered over the previous week and to continue discussions on how the Sims defendants intended to proceed. Sims, Sands, and Eagan were in attendance at the meeting as was a representative of Nordbank. At the meeting Levesque, Hayes, and DeMenezes were informed that the Sims defendants intended to take over complete control of the project, and, if Levesque, Hayes, and DeMenezes did not agree, Nordbank would foreclose on its loan to SCM Freedom Bay which would in turn foreclose on its loan to AACA and Freedom Bay, LLC. Levesque, Hayes, and DeMenezes were informed that if on the other hand they did agree, they would receive a forbearance agreement (the "forbearance agreement") and there would be no foreclosure. At the meeting, Hayes informed the Sims defendants that he was in the process of arranging financing to rescue the project with A.E.W. Capital of Boston, Massachusetts ("AEW"), a major national source of development capital.

46. On or about February 22, 2006 Hayes provided Sands with a term sheet from AEW to provide the necessary financing for the project. The Sims defendants rejected the offer out of hand.

47. On or about March 15, 2006, the Sims defendants caused Levesque, Hayes, and DeMenezes to sign the forbearance agreement, and to also execute a revised operating agreement of AACA ceding additional ownership interests such that the Sims defendants effectively accumulated more than 52% of the ownership of AACA. The Sims defendants also replaced Levesque as the managing member of Freedom Bay, LLC and advised that thereafter Eagan would act as the managing member.

48. The Sims defendants by their actions, as aforesaid, made it virtually impossible for Levesque, Hayes, and DeMenezes to take any further action to resolve the financing issues which the project faced.

49. Nevertheless, in or about August 2006, Discovery Communities, LLC ("Discovery") offered to purchase the entire project for approximately $32 million plus incentives to Levesque, Hayes, and DeMenezes. Discovery indicated that it had already

received preliminary financing approval from Key Bank and would be able to close within 60 days. The purchase would have paid off all of the indebtedness on the project owed to the Sims defendants and to Nordbank and would have permitted Levesque, Hayes, and DeMenezes to recapture the moneys they invested in the project. The Sims defendants by their intransigience caused Discovery to withdraw its proposal.

50. In or about December 2006 the project was placed into receivership in this Honorable Court.

51. On information and belief, in or about September 2007 Nordbank acquired the entire development from the court appointed receiver, having already entered into an arrangement to convey Freedom Bay to H J Sims subsequent to its acquisition of the development from the court appointed receiver. On information and belief, this arrangement is in the form of a purchase option, upon which H J Sims has made a substantial payment in the range of $5 to $8 million.

52. On information and belief, H J Sims intends to develop the property as a continuing care retirement community for the benefit of certain of the Sims defendants. Sands and representatives of Nordbank made certain presentations of preliminary plans to residents of Freedom Bay on or about December 6, 2007 advising of their ongoing plans.

53. At all times prior to the receivership proceedings and even thereafter, Levesque, Hayes, and DeMenezes reasonably believed that the Sims defendants, to whom Levesque, Hayes, and DeMenezes looked to for guidance on account of their extensive experience and expertise in the senior care industry, were acting in their best interests.

COUNT 1 (Breach of Fiduciary Duty)

54. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 1-53 above as though fully set forth herein.

55. By virtue of the acquisition of an ownership interest in AACA and in Freedom Bay by the Sims defendants through SCM and the powers reserved by the Sims defendants with respect to decisions involving Freedom Bay, and the active management role they took in the project, the Sims defendants placed themselves in a special relationship of trust and confidence with Levesque, Hayes, and DeMenezes and owed them a fiduciary duty with respect to the funding, management, and development of the project.

56. The Sims defendants breached the fiduciary duty they owed to Levesque, Hayes, and DeMenezes by among other things (a) causing or contributing to substantial delays in promised acquisition and development funding; (b) causing Levesque, Hayes, and DeMenezes to pay unnecessary interest expense on the indebtedness to various Sims entities and to Nordbank, resulting in serious shortfalls in the funds which were intended and needed for development of Freedom Bay; (c) collecting huge and outrageous fees from Levesque, Hayes, and DeMenezes in connection with the loans arranged by the Sims defendants which were intended to be used for the advancement of Freedom Bay; (d) repeatedly and continuously allowing the project to remain underfunded; (e) failing to make any capital contributions to the project or be willing to provide guarantees, even when necessary to secure financing on commercially reasonable terms to advance the project and to prevent its collapse under its then undercapitalized structure; (f) using their substantial ownership interest in AACA and Freedom Bay and their self imposed control over numerous management decisions to thwart any and all reasonable efforts by Levesque, Hayes, and DeMenezes to refinance the project; and (g) negligently and/or willfully and/or in bad faith, obstructing financing needed to advance the development of Freedom Bay and to prevent its collapse.

57. As acknowledged experts in the field of financing senior living and long term care facilities, the Sims defendants knew or should have known that by reason of their actions, as aforesaid, they were making it virtually impossible for Levesque, Hayes, and DeMenezes to advance the project and to salvage the development under its then existing debt structure as arranged by the Sims defendants.

58. As a result of the breach of fiduciary duty by the Sims defendants, Levesque, Hayes, and DeMenezes have suffered substantial economic losses and have been otherwise damaged.

59. On information and belief, the actions of the Sims defendants, as aforesaid, were willful and malicious.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus punitive damages in a sum which is sufficient to punish the defendants for their egregious behavior and to deter them from engaging in such conduct in the future, plus interest, costs, and reasonable attorneys fees.

COUNT 2 (Breach of Implied Covenant of Good Faith and Fair Dealing)

60. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 1-59 above as though fully set forth herein.

61. By virtue of special relationship of trust and confidence that existed between the Sims defendants and Levesque, Hayes, and DeMenezes, there existed an implied covenant of good faith and fair dealing in their business dealings.

62. The Sims defendants breached the covenant of good faith and fair dealing that they owed to Levesque, Hayes, and DeMenezes by taking actions in bad faith to advance the interests of the Sims defendants and which worked to the detriment of

Levesque, Hayes, and DeMenezes, including but not limited to: (a) their failure to guarantee the various loans of AACA guaranteed by Levesque, Hayes, and DeMenezes despite their substantial ownership interest in AACA and in Freedom Bay through SCM; (b) their refusal to make any equity contributions to AACA and the project even when it was necessary to obtain financing that had been arranged by Levesque, Hayes, and DeMenezes to prevent the collapse of Freedom Bay under its then current debt structure as arranged by the Sims defendants; (c) their acquisition of an initial ownership interest in AACA and Freedom Bay through SCM, and the subsequent increase thereof for inadequate or no consideration and on terms that allowed the Sims defendants to make decisions to advance their own interests to the detriment of Levesque, Hayes, and DeMenezes; and (d) the use of their substantial ownership interest in AACA and Freedom Bay through SCM and their self imposed control over all major management decisions to arbitrarily, unreasonably, and systematically thwart any attempts by Levesque, Hayes, and DeMenezes to refinance or sell the project on commercially reasonable terms.

63. As a result, Levesque, Hayes, and DeMenezes have suffered substantial economic losses and have been otherwise damaged.

64. On information and belief, the actions of the Sims defendants, as aforesaid, were willful and malicious.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus punitive damages in a sum which is sufficient to punish the defendants for their egregious behavior and to deter them from engaging in such conduct in the future, plus interest, costs, and reasonable attorneys fees.

COUNT 3 (Fraud)

65. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 1-64 above as though fully set forth herein.

65. On information and belief, the Sims defendants engaged in a pattern of activity which was purposefully designed to cause the Sims defendants to gain exclusive ownership and control of Freedom Bay to the exclusion of Levesque, Hayes, and DeMenezes.

66. Such actions on the part of the Sims defendants included, without limitation, (a) repeated misrepresentations made to Levesque, Hayes, and DeMenezes with regard to the Sims defendants' willingness to provide funding for the project and the timing thereof, which induced Levesque, Hayes, and DeMenezes to allow the Sims defendants to acquire an ownership interest in and later substantially increase their ownership in the project; (b) the acquisition by the Sims defendants of a substantial equity interest in AACA and Freedom Bay through SCM along with control over numerous management decisions without the payment of any consideration therefor or assumption of any of the risks that Levesque, Hayes, and DeMenezes undertook related to their ownership in AACA and Freedom Bay; (c) the imposition of unreasonable inhibitory practices that substantially increased the risk of failure of the project; (d) the arranging of loans payable to Sims related entities purportedly for the advancement of Freedom Bay but which the Sims defendants knew were insufficient to accomplish that objective but only served to increase the indebtedness of Levesque, Hayes, and DeMenezes and increase the risk of collapse of the project to the benefit of the Sims defendants; (e) the arbitrary and unreasonable refusal of the Sims defendants to inject any equity into the project, despite SCM's substantial ownership interest in AACA and Freedom Bay, even at a time when a relatively small equity investment was required to secure financing that would have advanced the project to completion; and (f) the arbitrary and unreasonable refusal by the Sims defendants to agree to refinancing of or sale of the project on commercially reasonable terms to save it from its eventual collapse, that was

the culmination of the scheme of the Sims defendants to acquire Freedom Bay to the exclusion of Levesque, Hayes, and DeMenezes.

67. As a result, AACA and Freedom Bay did fail, as intended by the Sims defendants, and certain of the Sims defendants gained what they set out to accomplish, namely the right to enjoy all of the millions of dollars of profits to be derived from the development of Freedom Bay to the exclusion of Levesque, Hayes, and DeMenezes, who have been greatly damaged by the actions of the Sims defendants.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus punitive damages in a sum that is sufficient to punish the defendants for their fraudulent actions and to deter them from engaging in such fraudulent actions in the future, plus interest, costs, and reasonable attorneys fees.

COUNT 4 (Breach of Fiduciary Duty/Unlawful Shifting of Tax Liabilty)

68. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 1-52 above as though fully set forth herein.

69. The Sims defendants failed to file federal tax returns for AACA for 2005 and 2006 until January 2008.

70. The operating agreement of AACA requires the Manager to deliver to members a lengthy list of financial documents on a quarterly basis and to provide clear and sufficient tax related materials for members to determine the validity of financial and tax matters. From the time the Sims defendants took control of AACA they have never provided financial statements to Levesque, Hayes, and DeMenezes as required by the operating agreement of AACA. They have also provided no tax related materials to support or explain the untimely K1 filings they provided in January 2008. The operating agreement clearly places this obligation on the Manager of AACA, at the company's

expense. Despite a demand from Hayes, Eagan refused to provide the materials in accordance with the operating agreement, telling Hayes to travel to a Buffalo, New York accounting firm at his own expense, and to pay the cost of copying materials in advance and pay the cost of the accounting firm's time in advance.

71. Based on the limited information provided, on information and belief, the Sims defendants have erroneously and negligently or willfully and maliciously caused approximately $5,325,000 of phantom income of AACA to be reported for tax year 2005, when the ownership interests of Levesque, Hayes, and DeMenezes were at their highest, and, have attempted to shift losses into subsequent years, after the Sims defendants increased their ownership in AACA.

72. The Sims defendants have violated their fiduciary duty owed to Levesque, Hayes, and DeMenezes by unlawfully attempting to shift a tax burden from themselves to Levesque, Hayes, and DeMenezes.

73. As a result, Levesque, Hayes, and DeMenezes have been damaged.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus punitive damages in a sum which is sufficient to punish the defendants for their fraudulent actions and to deter them from engaging in such fraudulent actions in the future, plus interest, costs, and reasonable attorneys fees.

COUNT 5 (Negligence and/or Wilful /Improper Shifting of Tax Liability)

74. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 68-71 above as though fully set forth herein.

75. The actions of the Sims defendants, as aforesaid, constitute negligence and/or willful and wanton misconduct.

76. As a result, Levesque, Hayes, and DeMenezes have been damaged.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus interest, costs, and reasonable attorneys fees.

COUNT 6 (Intentional and/or Negligent Infliction of Emotional Distress)

77. Levesque, Hayes, and DeMenezes incorporate by reference the allegations contained in paragraphs 1 through 76 above as though fully set forth herein.

78 As a result of the extreme and outrageous conduct on the part of the Sims defendants, Levesque, Hayes, and DeMenezes were caused to suffer great emotional harm and suffering.

79. The actions of the Sims defendants were either intentional or negligent.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages in a sum sufficient to invoke the jurisdiction of this Honorable Court, plus punitive damages in a sum which is sufficient to punish the defendants for their fraudulent actions and to deter them from engaging in such fraudulent actions in the future, plus interest, costs, and reasonable attorneys fees.

By their attorneys,

Joseph R. Palumbo, Jr., #0405
294 Valley Road
Middletown, Rhode Island 02842
Tel: (401) 846-5200
Fax: (401) 848-0984
Email: joseph@palumbolaw.net

Robert K. Harrington, #2123
56 North Main Street, Suite 303
Fall River, Massachusetts 02720
Tel: (508) 674-1812

PLAINTIFFS DEMAND A TRIAL BY JURY.